UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEAL D'ALESSIO, KIMBERLY STEVENS, and MARK BECK, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MATCH GROUP, LLC.<br><br>*Defendant*. | Case No. 21-CV-5765<br><br>Assigned to: Judge Alison J. Nathan |

**MEMORANDUM OF LAW IN SUPPORT OF MATCH GROUP, LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION PENDING ARBITRATION**

**DLA PIPER LLP (US)**

Keara M. Gordon
*keara.gordon@us.dlapiper.com*
1251 Avenue of the Americas
New York, New York 10020
T: (212) 335-4632
F: (212) 884-8632

*Attorney for Match Group, LLC*

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| **I.** | **INTRODUCTION**..................................................................................................................1 | | |
| **II.** | **BACKGROUND** ...................................................................................................................2 | | |
| | A. | Plaintiffs Agreed to Match's Terms of Use Agreement ..........................................2 | |
| | B. | The Terms of Use's Arbitration Provision & Forum Selection Clause ...................3 | |
| | C. | Plaintiffs Filed Suit in Violation of the Terms of Use ............................................4 | |
| **III.** | **ARGUMENT**.........................................................................................................................5 | | |
| | A. | Federal Law Requires Enforcement of the Parties' Arbitration Agreement............5 | |
| | | 1. | The Parties have a valid agreement to arbitrate. .........................................6 |
| | | 2. | Plaintiffs' claims fall within the scope of the Arbitration Provision. ..........7 |
| | B. | This Action Must Be Stayed Pending Arbitration .................................................10 | |
| | C. | A Valid Forum Selection Clause Supports Transferring this Litigation to the United States District Court for the Northern District of Texas. ...........................10 | |
| **IV.** | **CONCLUSION** ...................................................................................................................12 | | |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218 (2d Cir. 2019) ...................................................................................................... 10

*In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011) ........................................................................................................ 1

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ................................................................................................................... 1

*Am. Realty Trust, Inc. v. JDN Real Estate–McKinney, L.P.*, 74 S.W.3d 527 (Tex. App. Dallas 2002) ................................................................................... 8

*Androb Jewelry Serv. v. Malca-Amit USA, LLC*, No. 16-5171, 2017 WL 4712422 (S.D.N.Y. Sept. 25, 2017) .................................................. 11

*Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522 (2d Cir. 2011) ........................................................................................................ 6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ................................................................................................................... 5

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. Of Tx.*, 571 U.S. 49 (2013) ............................................................................................................. 10, 11

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................................................................................................... 1

*Buckley v. National Football League*, No. 18-3309, 2018 WL 6198367 (S.D.N.Y. Nov. 16, 2018) ...................................................... 7

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16 (2d Cir. 1995) ............................................................................................................ 8

*Daly v. Citigroup Inc.*, 939 F.3d 415 (2d Cir. 2019) ........................................................................................................ 5

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001) .......................................................................................................... 8

*Graf v. Match.com, LLC*, No. 15-3911, 2015 WL 4263957 (C.D. Cal. Jul. 10, 2015) ................................................ 7, 11

*Harrington v. Atlantic Sounding Co., Inc.*,
    602 F.3d 113 (2d Cir. 2015)..........................................................................................5

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)......................................................................................8, 9

*Johnston v. Electrum Partners LLC*,
    No. 17-7823, 2018 WL 3094918 (S.D.N.Y. June 21, 2018) ......................................8

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015)........................................................................................10

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001)..........................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..........................................................................................................5

*Pasture Renovators, LLC v. Lawson Cattle & Equip., Inc.*,
    480 F. Supp. 2d 890 (W.D. Tex. Feb 24, 2006)...........................................................6

*Phillips v. Audio Active, Ltd.*,
    494 F.3d 378 (2d Cir. 2007)........................................................................................11

*Ward v. Cultural Care, Inc.*,
    No. 19-930, 2020 WL 2832771 (S.D.N.Y. May 31, 2020) ................................10, 11

*Yang v. Bank of N.Y. Mellon Corp.*,
    No. 20-3179, 2021 WL 1226661 (S.D.N.Y. Mar. 31, 2021).......................................6

**Statutes**

9 U.S.C. § 2........................................................................................................................1

9 U.S.C. § 3..................................................................................................................1, 10

28 U.S.C. § 1404(a) ............................................................................................2, 10, 11

Tex. Civ. Prac. & Rem. Code 171.001 ............................................................................6

## I. **INTRODUCTION**[1]

The Federal Arbitration Act (the "FAA") requires that the plaintiffs arbitrate their claims and, as a result, defendant Match Group, LLC ("Match") respectfully requests that the Court stay this suit pending arbitration. 9 U.S.C. §§ 2, 3. Specifically, the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006). For this reason, "courts must 'rigorously enforce' arbitration agreements." *Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013). Courts will therefore compel arbitration when (1) "the parties have entered into a valid agreement to arbitrate," and (2) "the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.,* 672 F.3d 113, 128 (2d Cir. 2011). These circumstances exist here.

The plaintiffs' claims fall within the scope of a valid arbitration agreement, which requires the plaintiffs to pursue their claims in arbitration and this litigation to be stayed. *See* 9 U.S.C. § 3 (providing that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). And plaintiffs' counsel has conceded as much—highlighting his inadequacy to represent the interests of any potential class—by filing 10 arbitration demands arising from the same purported unlawful conduct alleged here. *See Declaration of Dushyant Saraph in Support of Motion to Compel*

---

[1] Match reserves all rights, in the event this Motion is denied, in whole or in part, to file a responsive pleading under Federal Rule of Civil Procedure 12(b). By filing this motion, Match does not waive, and hereby reserves, all applicable defenses.

1

*Arbitration* ("Saraph Decl.") at ¶ 19. If the Court elects not to compel arbitration at this time, Match respectfully requests this litigation be transferred to the United States District Court for the Northern District of Texas pursuant to a valid and binding forum selection clause and 28 U.S.C. § 1404(a).

## II.     BACKGROUND

### A.     Plaintiffs Agreed to Match's Terms of Use Agreement

Match operates Match.com. Compl. at ¶10. Services offered by Match "enable people to find and introduce themselves to potential connections over the [i]nternet." *Id.* at ¶ 11. To use Match.com, individuals "first create a profile containing [their] personal information, such as [their] age, gender, and location along with a photograph." *Id.* These profiles can then be reviewed by others using Match's service. *Id.*

Each time a person purchases a subscription to Match.com, they are required to review and accept Match's Terms of Use.[2] *See* Saraph Decl. at ¶¶ 8-12. During the relevant time period, the subscription page has always contained a button, typically labelled "SUBSCRIBE" or "SUBSCRIBE NOW" that the user clicks to affirm consent to Match's Terms of Use—a prerequisite to subscribing to Match.com. *Id.* at ¶ 9. Immediately adjacent to the "SUBSCRIBE" button on the registration page was a statement that explained that by clicking "Subscribe," the consumer was certifying that her or she agreed to Match's Terms of Use. *Id.* at ¶ 10. The "Terms of Use" link is always conspicuously hyperlinked to the full text of the Terms of Use so that the consumer could readily access and review the Terms of Use before clicking "SUBSCRIBE." *Id.* at ¶ 11. An example of a subscription page demonstrating the Terms of Use acceptance is below:

---

[2] Moreover, Match.com users must also agree to the Terms of Use at time of registration.



Plaintiffs Neal D'Alessio, Kimberly Stevens, and Mark Beck (collectively, "plaintiffs") are three individuals who allegedly purchased multiple subscriptions to Match.com. Just like all other members of the Match community, each of these plaintiffs affirmatively accepted Match's Terms of Use each time they purchased a new subscription to Match.com. *Id.* at ¶ 12. Plaintiffs do not, and cannot, allege otherwise.

B.   **The Terms of Use's Arbitration Provision & Forum Selection Clause**

The Terms of Use specify the method and procedure for resolving any dispute between Match and its customers. In relevant part, the Terms of Use contain an arbitration provision (the "Arbitration Provision") that provides "[t]he exclusive means of resolving any dispute or claim arising out of or relating to [the Terms of Use] (including any breach thereof) or [Match's] Services shall be BINDING ARBITRATION administered by JAMS under the JAMS Streamlined

Arbitration Rules & Procedures." *Id.* at ¶ 18; *see also id.* at Ex. 8 at § 15(a).[3] "Services" is defined to include any "access[] or use[]" of the "match.com" website, "the Match mobile application, or any other platforms or services Match may offer." *Id.*, Ex. 8 at § 1. The Arbitration Provision contains only one exception to the exclusivity of arbitration. It provides that "either party . . . [may] bring an individual claim against the other in a small-claims court of competent jurisdiction." *Id.* at § 15(a).

The Terms of Use also contain a forum selection clause, which provides that "any claims that are not submitted to arbitration for any reason must be litigated in Dallas County, Texas (except for claims brought in small claims court, or where prohibited by law)." *Id.*, Ex. 8 at § 15(c); *see generally*, *id.* at Exs. 4-8.

### C. Plaintiffs Filed Suit in Violation of the Terms of Use

Notwithstanding the Terms of Use, Arbitration Provision, and Forum Selection Clause, on July 6, 2021, the plaintiffs filed this suit alleging, among other things, a breach of the Terms of Use and violations of state consumer protection law related to their interactions with Match concerning its Services. *See* ECF No. 1. Shortly thereafter, the plaintiffs' counsel filed 10 arbitration demands, which attach the Arbitration Provision and acknowledge that claimants are bound by its terms, premised on the same allegations that give rise to the Complaint in this action. *See* Saraph Decl. at ¶ 19. The plaintiffs' counsel also filed at least two small claims actions in Florida that also repackage the same claims asserted here. *Id.* Put simply, given the explicit

---

[3] Earlier versions of the Arbitration Provision provided the same, with one notable exception. *See* Saraph Decl. at ¶ 18. While earlier versions also explained that "the exclusive means of resolving any dispute or claim arising out of or relating to [the Terms of Use] (including any alleged breach thereof), the Service, or the Website shall be BINDING ARBITRATION," that arbitration was to be administered by the American Arbitration Association, not JAMS. *Compare id.*, Ex. 4 at § 19(a), *with id.*, Ex. 8 at § 15(a). To date, each of the 10 arbitration demands filed by the plaintiffs' counsel has been filed in JAMS. Saraph Decl. at ¶ 19. For this reason, Match asserts here that the current JAMS arbitration provision controls.

4

language contained in the Arbitration Provision and plaintiffs' counsel's conduct to date admitting that the Terms of Use, including the Arbitration Provision, govern, there is no good faith argument to be made in opposition to this Motion to Compel.[4] The plaintiffs filed this suit in contravention of the Arbitration Provision and, as described below, the FAA compels this litigation be stayed pending arbitration.

### III. ARGUMENT

#### A. Federal Law Requires Enforcement of the Parties' Arbitration Agreement.

Where, as here, an agreement to arbitrate exists, a "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2015). The burden on a party resisting arbitration is heavy. "[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.*" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (cleaned up and emphasis added); *accord Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

---

[4] Following the commencement of this litigation, plaintiffs' counsel made a number of comments to the press suggesting that he is well aware that Match's Terms of Use require plaintiffs' claims be arbitrated. For example, on July 13, 2021, commenting on this litigation, plaintiffs' counsel stated that "[t]he challenge that a lot of us have as a consumer, with all the applications on our phone, almost all have these terms and conditions that make it difficult for consumers to bring a class action." In light of that reality, counsel further noted that his firm has handled "hundreds and hundreds of arbitrations." *Love & Arbitration*, DAILY BUSINESS REVIEW, available at https://www.law.com/dailybusinessreview/2021/07/13/love-arbitration-tinder-match-com-in-50m-class-action-crosshairs-as-defense-braces-for-attempt-at-alternative-dispute-resolution/ (last accessed Sept. 15, 2021).

Match's Terms of Use contains a valid Arbitration Provision that covers the claims the plaintiffs assert in this litigation. Indeed, the plaintiffs' counsel has conceded as much, filing over 10 arbitration demands arising from the same purported unlawful conduct alleged here, and filing two small claims court actions. *See* Saraph Decl. at ¶ 19. For these reasons, the Court should compel proceedings pursuant to the Arbitration Provision.

        1.        <u>The Parties have a valid agreement to arbitrate.</u>

"[I]n deciding whether a contractual obligation to arbitrate exists, 'courts should generally apply state-law principles that govern the formation of contracts.'" *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC,* 645 F.3d 522, 526 (2d Cir. 2011). As applicable here, Match's Terms of Use provide that "the laws of Texas, U.S.A, excluding Texas's conflict of law rules, will apply to any disputes arising out of or relating to th[e Terms of Use] or [Match's] Services." Saraph Decl., Ex. 8, at § 15(b). Under Texas contract principles, the Terms of Use, and the Arbitration Provision contained therein, are valid.

Basic contract law in Texas is not unique.[5] In Texas, like elsewhere, "[a] valid contract requires an offer and acceptance, supported by consideration." *Pasture Renovators, LLC v. Lawson Cattle & Equip., Inc.*, 480 F. Supp. 2d 890, 893 (W.D. Tex. Feb 24, 2006); *cf.* Tex. Civ. Prac. & Rem. Code 171.001 (noting that an arbitration provision in a written agreement is valid and enforceable if the arbitration provision "exists at the time of the agreement," and "arises between the parties after the date of the agreement."). By this standard, Match's Terms of Use, which contain the Arbitration Provision, constitutes a valid contract. Match made the plaintiffs an offer.

---

[5] To the extent Plaintiffs argue that New York law applies, they are wrong. But, in any event, the result would be the same. *See Yang v. Bank of N.Y. Mellon Corp.*, No. 20-3179, 2021 WL 1226661, at *9 (S.D.N.Y. Mar. 31, 2021) (Nathan, J.) ("To form an enforceable contract under New York law, there must be an offer, acceptance, and consideration, as well as a showing of a meeting of the minds, demonstrating the parties['] mutual assent and mutual intent to be bound.").

It promised to provide the plaintiffs use of and access to its platforms. *See, e.g.*, Saraph Decl. at ¶ 6; Compl. at ¶¶ 10-11. In exchange, Match required that the plaintiffs agree to its Terms of Use. *See* Saraph Decl. at ¶¶ 6, 8-11. Plaintiffs accepted that offer and actively used Match's platform. *Id.* at ¶ 12. These facts establish that the Terms of Use constitute a valid and enforceable agreement.

Plaintiffs cannot escape this conclusion by claiming that they were not adequately provided notice of the Terms of Use or the Arbitration Provision. The Terms of Use and Arbitration Provision were provided to the plaintiffs at the time they subscribed on Match.com. *See id.* at ¶¶ 9-12. And before registering, Match required each plaintiff to affirm that they would be bound by the Terms of Use. *Id.* Each plaintiff made that affirmation, accepting Match's offer and agreeing to be bound by the Terms of Use. *Id.* at ¶ 12. On identical facts, at least one federal court has already held that Match's practice, requiring affirmative consent to its Terms of Use, was dispositive of any inquiry related to the validity of the Arbitration Provision contained therein. *See Graf v. Match.com, LLC*, No. 15-3911, 2015 WL 4263957, at *4 (C.D. Cal. Jul. 10, 2015). There, a plaintiff, on behalf of a putative class, filed suit in federal district court against Match alleging that Match failed to provide a subscription cancellation notice to Match.com subscribers as required under California law. Match moved to compel pursuant to the unambiguous terms of the Arbitration Provision. And the Court compelled arbitration. The same result should follow here.

2. <u>Plaintiffs' claims fall within the scope of the Arbitration Provision.</u>

When an arbitration agreement is drafted broadly to require arbitration of any dispute or claim, the arbitration agreement, standing alone, "creates a presumption of arbitrability," *Buckley v. National Football League*, No. 18-3309, 2018 WL 6198367, at *3 (S.D.N.Y. Nov. 16, 2018), and evinces an "inten[tion for] all issues that 'touch matters' within the main agreement to be arbitrated," *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d

7

Cir. 2001).[6] Where the arbitration clause at issue is a broad one, it applies not only to resolve inquiries into breach of contract, but also to resolve all "collateral matters" within the agreement's broad scope. *JLM Indus.*, 387 F.3d at 172 (internal quotation marks omitted); *see id.* ("[W]here the arbitration clause at issue is a broad one, it is presumptively applicable to disputes involving matters going beyond the 'interpretation or enforcement of particular provisions' of the contract which contains the arbitration clause").

Plaintiffs' claims are presumptively subject to arbitration. The Arbitration Provision broadly covers "***any dispute or claim*** arising out of or relating to [Match's Terms of Use] (including any alleged breach thereof) or [Match's] Services." Saraph Decl., Ex. 8 at 15(a) (emphasis added); *accord supra* n.2. Notably, "Services" is defined to include any "access[] or use[]" of the "match.com" website, "the Match mobile application, or any other platforms or services Match may offer." *Id*. at § 1. Courts broadly interpret the phrases "any dispute" and "arising out of or relating to" when interpreting arbitration clauses. *See Am. Realty Trust, Inc. v. JDN Real Estate–McKinney, L.P.*, 74 S.W.3d 527, 531 (Tex. App. Dallas 2002, pet. denied) ("A broad arbitration clause, purporting to cover all claims, disputes, and other matters relating to the contract or its breach, creates a presumption of arbitrability."); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (noting the "broad language" of the arbitration provision, which covered "all disputes, claims, or other matters in question arising out of or relating to the Loan . .

---

[6] *See, e.g.*, *JLM Indus., Inc. v. Stolt-Nielsen SA,* 387 F.3d 163, 172 (2d Cir. 2004) (finding an arbitration clause encompassing "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" broad in scope); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 20 (2d Cir. 1995) (an arbitration clause covering "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause"); *Johnston v. Electrum Partners LLC*, No. 17-7823, 2018 WL 3094918, at *10 (S.D.N.Y. June 21, 2018) ("The arbitration provision at issue here, which encompasses 'any and all controversies or claims arising out of or relating to [the] Agreement' . . . is 'classically broad.'" (alteration in original) (citing *Mehler v. Terminix Int'l Co.,* 205 F.3d 44, 49 (2d Cir. 2000))).

. ."). Thus, the Arbitration Agreement fairly encompasses every and all claims connected to a customer's interaction with Match or experience using its Services, which subjects the plaintiffs' claims to a presumption of arbitrability. *See JLM Indus.,* 387 F.3d at 172.

Even putting aside the presumption of arbitrability, the plaintiffs' claims fit squarely within the scope of this Arbitration Provision. For example, the plaintiffs attempt to plead claims for breach of Match's Terms of Use (*see, e.g.*, Count VI, VIII). The Arbitration Provision explicitly provides that claims "arising out of or relating to" Match's Terms of Use must be arbitrated (or litigated in small claims court), not litigated in Federal District Court. Saraph Decl., Ex. 8 at § 15(a). Similarly, the plaintiffs allege claims premised on a supposed inability to obtain free use of Match Services after failing to find "someone special" during their initial six-month subscriptions (*see, e.g.*, Count IV, V). Again, these claims are subject to the Arbitration Provision, which provides for arbitration (or litigation in small claims court) for "any dispute or claim arising out of or relating to . . . [Match's] Services." *Id.*

Plaintiffs cannot rebut the presumption of arbitrability. Nor can they in good faith argue that their claims do not arise from or relate to Match's Terms of Use or the provision of Match's Services: the plaintiffs' counsel has implicitly conceded that the claims asserted here are within the scope of the Arbitration Provision. Indeed, the plaintiffs' counsel has filed 10 arbitration demands and two small claims actions in Florida that are premised on the same allegedly wrongful conduct as the Complaint filed here. Saraph Decl. at ¶ 19. Plaintiffs should join those claimants in individual arbitrations or small claims proceedings.

Because the plaintiffs' claims rest squarely within the scope of the valid Arbitration Provision, they must be compelled to arbitrate their claims.

### B. This Action Must Be Stayed Pending Arbitration

Following a finding that claims must be arbitrated or pursued in small claims court, the FAA mandates that the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). The Second Circuit has recognized that this provision "creates an obligation impervious to judicial discretion," and has held that the FAA "command[s]" that "a stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship,* 794 F.3d 341, 345 (2d Cir. 2015); *accord Abdullayeva v. Attending Homecare Servs.* LLC, 928 F.3d 218, 226 n.5 (2d Cir. 2019). Through this Motion, Match has established that the plaintiffs' actions, as well as any actions by any member of their purported class, must be arbitrated (or litigated in small claims court) and now requests a stay of this litigation. Accordingly, this action must be stayed until the conclusion of arbitration.

### C. A Valid Forum Selection Clause Supports Transferring this Litigation to the United States District Court for the Northern District of Texas.

Federal law provides that, "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a "mandatory forum selection clause governs the claims in a given action, however, . . . 'a proper application of [28 U.S.C. § 1404] requires that a forum selection clause be given controlling weight in all but the most exceptional cases.'" *Ward v. Cultural Care, Inc.*, No. 19-930, 2020 WL 2832771, at *2 (S.D.N.Y. May 31, 2020) (Nathan, J.). When there is a valid and enforceable forum selection clause, transfer is appropriate unless the non-moving party can show that the public interest "overwhelmingly disfavor[s] a transfer." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. Of Tx.*, 571 U.S. 49, 67 (2013). This standard applies even if the forum

selection clause is construed to cover only some of the claims asserted. *See, e.g.*, *Androb Jewelry Serv. v. Malca-Amit USA, LLC*, No. 16-5171, 2017 WL 4712422, at *9 (S.D.N.Y. Sept. 25, 2017) (Nathan, J.) (collecting cases).

A valid and enforceable forum selection clause contained in Match's Terms of Use clearly and unambiguously favors transfer. In relevant part, the Forum Selection Clause provides that:

> "[A]ll claims arising out of or relating to this Agreement, to our Services, or to your relationship with Match that for whatever reason are not submitted to arbitration ***will be litigated exclusively*** in the federal or state courts of Dallas County, Texas"

Saraph Decl., Ex. 8 at § 15(c) (emphasis added). This provision was plainly communicated to the plaintiffs when they expressly agreed to the Terms of Use, and a plain review of its terms establish that it applies with mandatory effect to the plaintiffs' claims. *See id.* at ¶¶ 8-12; *accord Graf, LLC*, 2015 WL 4263957 at *4 (finding that Match's presentation of the Terms of Use to consumers via a hyperlink adequately permits a consumer to assent to its terms and is "consistently enforced."). The forum selection clause is therefore "presumptively enforceable." *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).

That "presumption can be overcome only by [] making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Ward*, 2020 WL 2832771 at *3 (citing *Martinez v. Bloomberg*, 740 F.3d 211, 217 (2d Cir. 2014)). Plaintiffs are unable to make any such showing here. This is not one of the "most exceptional cases" where a forum selection clause should be cast aside in deference to significant public interest concerns. *Atl. Marine*, 571 U.S. at 60. Accordingly, if the Court elects not to compel arbitration at this time, it should transfer this action to the United States District Court for the Northern District of Texas pursuant to the Terms of Use's forum selection clause and 28 U.S.C. § 1404(a).

11

## IV. CONCLUSION

For the reasons stated above, the Court should compel Plaintiffs to proceed with their claims in accord with the relevant arbitration agreements, or, in the alternative, transfer this case to the United States District Court for the Northern District of Texas.

Dated: September 17, 2021

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ Keara M. Gordon
Keara M. Gordon
*keara.gordon@us.dlapiper.com*
1251 Avenue of the Americas
New York, New York 10020
T: (212) 335-4632
F: (212) 884-8632

*Attorney for Match Group, LLC*